Terry L. Stoltz (TS-7650)
NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
*Attorneys for Defendant Americas Bulk Transport Ltd.*
Wall Street Plaza
88 Pine Street
Seventh Floor
New York, New York 10005
(212) 220-3830

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
                                                                        :
YTHAN LIMITED,                                                          :     04 Civ. 6655 (PKC)
                                                                        :
                              Plaintiff,                                :
                                                                        :
            - against -                                                 :
                                                                        :
AMERICAS BULK TRANSPORT LIMITED,                                        :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF A
MOTION SEEKING AN ORDER (1) DECLARING THE
AUGUST 25 PROCESS OF MARITIME ATTACHMENT
SATISFIED (2) DECLARING THE AUGUST 27, 30 AND 31
PROCESSES OF MARITIME ATTACHMENT VOID OR
SATISFIED AND (3) DIRECTING GARNISHEE
CITIBANK, NA TO DEPOSIT THE ATTACHED FUNDS
<u>INTO THE REGISTRY OF THE COURT.</u>**

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff Ythan Ltd. ("Ythan"), commenced this action to obtain security for an arbitration proceeding pending in London. In a Memorandum and Order dated September 15, 2004 (Exh. 6)[1], this Court upheld a maritime attachment of funds in the possession of garnishee Citibank N.A. ("Citibank"). Defendant Americas Bulk Transport Limited ("Americas Bulk"),

---

[1] "Exh. __" refers to the Exhibits attached to the Affirmation In Support of the Motion executed by Terry L. Stoltz on October 28, 2004.

moved for reconsideration, but that motion was denied on September 24 by an Order advising that Americas Bulk could seek "an order declaring the Process of Maritime Attachment to have been satisfied" (Exh. 7, p. 2). This Memorandum of Law is submitted in support of a motion seeking an order (1) declaring the Process of Maritime Attachment and Garnishment ("PMAG"), served on August 25 satisfied; (2) declaring the PMAGs served on August 27, 30, and 31 void, or alternatively, satisfied; and (3) directing Citibank to pay the funds subject to attachment into the registry of the Court where they can be placed in an interest bearing account.

## FACT STATEMENT

On August 17, 2004, this Court entered an Order directing the Clerk of the Court to issue a PMAG to attach funds of Americas Bulk in the possession of Citibank. The Clerk duly issued the PMAG that same day (Stoltz Aff. ¶ 2).

After the initial service of the PMAG on Citibank, Citibank and Ythan's counsel agreed, in order to minimize disruption to the bank, that Ythan's counsel would serve the bank with additional copies of the PMAG by facsimile once each morning, and the bank would deem that to be continual service throughout the day (Stoltz Aff. ¶ 3). Pursuant to the agreement, facsimile service was made on Citibank at 9:32 am on August 25. At 12:51 pm on August 25, Citibank received three electronic transfers of funds on behalf of Americas Bulk from the Bank of Bermuda in the amounts of $4,256.28, $356,866.44 and $61,149.65. At 1:20 pm, Citibank received two additional electronic transfers on behalf of Americas Bulk in the amount of $51,066.62 and $44,000. A sixth and final electronic transfer in the amount of $8,500 was received at 2:51 pm (Exh. 1).

Ythan's counsel advised Americas Bulk of the lawsuit and the attachment by facsimile dated August 26, 2004 (Exh. 2). On that same day, Messrs. Freehill Hogan & Mahar filed a

general appearance in this action on behalf of Americas Bulk (Exh. 3). Messrs. Nicoletti Hornig Campise Sweeney & Paige were later substituted for the Freehill firm as attorneys for Americas Bulk (Exh. 5).

Despite the appearance by lawyers representing Americas Bulk, on the mornings of August 27, 30, and 31, additional copies of the PMAG were served on Citibank. Later on August 31, a transfer of $54,661.28 to Phoenix Bulk Carriers (U.S.) was received by Citibank (Stoltz Aff. ¶ 6).

Citibank defaulted in filling a garnishee's answer herein. Instead, on September 30, 2004, Citibank wrote to Ythan's counsel confirming that $580,500.27 were being restrained pursuant to the attachment (Exh. 8).

In accordance with the Court's decision on September 15 validating the agreement between Citibank and Ythan's counsel that a single service of the PMAG in the morning would be treated as continual service throughout the day, the service of the PMAG on the morning on August 25 was a sufficient basis for restraining the three electronic transfers received by Citibank simultaneously at 12:51 pm on that day. In the September 24 Order denying the motion for reconsideration (Exh. 7, p.2), this Court stated that the issue as to how long the PMAG remains in effect was not then before the Court for decision. This motion seeks to have that issue determined. The issues raised by this motion are (i) whether that PMAG was effective in reaching any after-acquired property coming into the possession of Citibank after 12:51 pm on August 25 and (ii) if so, how long does it remain effective?

ARGUMENT

POINT I.

### THE PMAG SERVED ON AUGUST 25 REACHED NO AFTER-ACQUIRED PROPERTY RECEIVED BY THE BANK AFTER 12:51 PM ON THAT DAY.

Although Reibor Int'l Ltd. v. Cargo Carriers (Kacs-Co) Ltd., 759 F.2d 262 (2d Cir. 1985) has been cited as support for the proposition that if an attachment is valid, it reaches "after-acquired property", Memorandum and Order of September 15, Exh. 6, pp. 4-5, Metal Transport Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A., 89-CV-8505, 1990 WL 55687, at *2 (S.D.N.Y. April 26, 1990), the Second Circuit has itself described Reibor as holding that "Rule B attachment does not extend to after-acquired property." Cornish Shipping Ltd. v. International Nederlanden Bank B.V., 53 F.3d 499, 507, n.11 (2d Cir. 1995) (emphasis added); Contichem LPG v. Parsons Shipping Co., Ltd., 229 F.3d 426, 433 (2d Cir. 2000) (recognizing "well-established prohibition against maritime attachments of after-acquired property"); see Union Planters Nat'l Bank v. World Energy Sys. Assoc., 816 F.2d 1092, 1098 (6th Cir. 1987); Gulf Marine & Industrial Supplies, Inc. v. New Filipino Maritime Agencies, Inc., 01-CV-0555, 2001 WL 277924, *3 (E.D. La. March 20, 2001) (maritime attachment "is not effective against after-acquired property"); Furness Withy (Chartering), Inc. v. World Energy Sys. Assoc., Inc., 642 F.Supp. 50, 56 (W.D. Tenn. 1985) (court had "serious doubts as to whether attachments . . . can reach after-acquired property"); cf. United States v. All Monies of Banco Cafetero Int'l, 608 F.Supp 1394, 1403-04 (S.D.N.Y. 1985) (invalidating Rule C arrest of after-acquired property), aff'd 797 F.2d 1154 (2d Cir. 1986).

Under this line of cases, once the three simultaneous electronic transfers were received at 12:51 pm on August 25, the PMAG should be deemed to be satisfied. The after-acquired

4

property (namely the transfers received at 1:20 pm and 2:51 pm on August 25 and the transfer received on August 31) coming into the hands of Citibank was not subject to the PMAG. Nor could this rule be evaded by continually serving additional copies of the same PMAG. A new PMAG would need to be issued and timely served in order to reach such additional property. See Supplemental Admiralty Rule E(4)(c). Accordingly, the attachment should be vacated as to the after-acquired remaining three electronic transfers intercepted on August 25 and the transfer on August 31.

## POINT II.

### NEW YORK LAW EXTENDING ATTACHMENTS TO AFTER-ACQUIRED PROPERTY IS UNSUITABLE FOR MARITIME ATTACHMENT.

Ythan argues that the PMAG remains in effect for 90 days like an attachment under State law (Memo in Opposition, p. 12). In Reibor, the Second Circuit did look to CPLR 6214(b) to determine the validity of a PMAG under the facts presented in that case, because there was insufficient admiralty precedent. Reibor, 759 F.2d at 266. It is appropriate in such circumstances for a Federal court, when formulating a Federal common law rule for admiralty cases, to look to a State statute for inspiration. But not all elements of the enactment by the local legislature may be suitable for adoption as part of a Federal regime intended to apply uniformly around the country.

Thus, in Winter Storm v. TPI, 310 F.3d 263 (2d Cir. 2002), the Second Circuit considered N.Y.U.C.C. § 4-A-503, which specifically excluded electronic transfers from "property" subject to attachment under the CPLR. Id. at 267. But the Court noted that there was already an existing Federal common law rule that electronic funds in the hands of an

intermediary bank could be seized by Federal process like Rule B, thereby eliminating the need "to look for guidance in state law." Id. at 278. See also, Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996) (Court rejected garnishee bank's reliance on right of set-off under NY Debtor & Creditor Law § 151 to defeat prior Rule B attachment).

In this case, Rule B specifically provides that a garnishee is to answer within twenty (20) days and if the garnishee admits that it holds any property, the property may be "paid into the registry of the court." This principle, that the effectiveness of an attachment to reach after acquired property, terminates when the garnishee answers, see Supplemental Admiralty Rule E(4)(c), is also reflected in CPLR 6214(b) which provides that the garnishee must "forthwith transfer or deliver all such property . . . up to the amount specified in the order of attachment" and that after "such payment, transfer or delivery, property coming into the possession or custody of the garnishee . . . shall not be subject to the levy."

Rule B requires the garnishee to answer the PMAG but also contemplates that the garnishee may retain possession of the attached property at least for a little while. If the garnishee fails to make a return, the Rule provides that the court may "award compulsory process against the garnishee." The New York legislature goes one step further. State law mandates that after ninety (90) days, the levy "shall be void" except as to property "taken into . . . actual custody." CPLR 6214(e).

The New York statutory 90 day rule is not readily adapted for use with Rule B on a national basis. See Metal Trans. Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A., 89-CV-8505, 1990 WL 103987 (S.D.N.Y. July 16, 1990) (plaintiff could not rely on CPLR 6201(1) to continue Rule B attachment where it had not complied with all the other requirements for a state court attachment). To begin with, the Supreme Court has cautioned against expansion

of pre-judgment provisional remedies without Congressional authorization, because allowing a putative creditor wider freedom to "interfere with the business affairs of the alleged debtor, would manifestly be susceptible of the grossest abuse," even to the point of a "powerful weapon of oppression . . . at the disposal of unscrupulous litigants."  Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 330 (1999) (quoting Wait, Fraudulent Conveyances § 73, at 110-11).[2]  The New York legislature has guarded against this risk by prescribing damages for wrongful attachment, including attorneys' fees, and requiring a party seeking an attachment to post a bond to cover such damages.  CPLR §§ 6212(b), (e).  By contrast, there is no cause of action for wrongful maritime attachment in the absence of bad faith. See Furness Withy (Chartering) v. World Energy Sys., 854 F.2d 410 (11th Cir. 1988), cert. denied, 489 U.S. 1013 (1989).

In short, the New York rule keeping an attachment alive for 90 days is surrounded by safeguards, none of which are found in Rule B.  Unless and until Congress (or the Supreme Court under the Rules Enabling Act) provides for such safeguards, PMAGs should not be treated as reaching any property acquired after the process has been served.

Again, the PMAG herein should be vacated as to the after-acquired three electronic transfers on August 25 and the transfer on August 31.

---

[2] There is no doubt that Ythan intends to continue to disrupt Americas Bulk's business affairs. On October 21, 2004, Ythan attached the bunkers aboard GREAT GLORY, a vessel on time charter to Americas Bulk, in Panama (Stoltz Aff. ¶ 8).

## POINT III.

### IN THE ALTERNATIVE, SERVICE OF COPIES OF THE SAME PMAG SHOULD NOT BE VALID AFTER DEFENDANT ENTERED A GENERAL APPEARANCE.

If the Court holds that the PMAG does not reach after-acquired property, See Point I, above, then Ythan may seek to uphold the attachment of the funds on August 31 on the basis of the service of an additional copy of the PMAG on Citibank on the morning of August 31. However, by the time Ythan re-served copies of the same PMAG on August 27, 30 and 31, counsel had filed a general appearance for Americas Bulk in this action (Exh. 3). It is one thing to serve a PMAG at the outset of a lawsuit. Clearly, once the defendant enters a general appearance, the plaintiff would not be entitled to issuance of another PMAG by the Court (i.e. alias process under Rule E(4)(c)) since the defendant would by then be found within the district, thereby defeating an essential condition for securing a PMAG – that the defendant not be found within the district. Chilean Line, Inc. v. United States, 344 F.2d 757, 762 (2d Cir. 1965); Chumet Shipping Co. v. S.S. PITREA SEA, 1978 A.M.C. 2579 (S.D.N.Y. 1978); Metal Trans. Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A., 89-CV-8505 1990 WL 103987 *2 (S.D.N.Y. July 16, 1990) (appointment of agent before service of writ of attachment prevented maritime attachment); Allied Maritime, Inc. v. The Rice Corp., 04-CV-7029, 2004 W.L. 2284389 *1 (S.D.N.Y. October 12, 2004) ("TRC having answered, the process of maritime attachment has stopped.") Fernandes v. United Fruit Co., 1969 A.M.C. 1823 (D.Md. 1969) (appearance of defendant prior to service of PMAG sufficient to defeat attachment (citing 2 Benedict on Admiralty 6th Ed.: "Actual appearance by the respondent before the marshal levies on the property" overcomes Rule B)).

There is no basis for the plaintiff to keep serving copies of the <u>same</u> <u>original</u> <u>PMAG</u> throughout the lawsuit.  The effectiveness of the process has to be exhausted at some point.  If the writ is held to reach after-acquired property at all, the most logical place to cut off its reach is when the defendant has appeared in the lawsuit.

## POINT IV.

### IN THE ALTERNATIVE, THE PMAG SHOULD NOT REACH AFTER-ACQUIRED PROPERTY AFTER THE GARNISHEE ANSWERS OR DEFAULTS IN ANSWERING AS TO THE DEFENDANT'S PROPERTY IN THE GARNISHEE'S HANDS, <u>WHICHEVER IS EARLIER.</u>

Rule B(3)(a) requires a garnishee to answer within 20 days after receipt of service of a PMAG about property of the defendant in the garnishee's hands. If the service of all copies of the PMAG is held to be valid, the last occurred on August 31. Accordingly, Citibank should have answered on September 20, but defaulted instead.

There are no other deadlines provided in Rule B for garnishees. It would be appropriate to use the point at which the garnishee admits holding property of the defendant subject to a PMAG, or the point at which the garnishee should have made such an admission, as the absolute outer limit for a PMAG to reach after-acquired property.

While such a ruling would not require any vacatur here, it would enable Americas Bulk to resume using its normal banking channels which have been severely disrupted by Ythan's insistence that the copies of the PMAG served in August continue to be effective to seize any of defendant's funds which might turn up in those banking channels even now.

## POINT IV.

### THE ATTACHED FUNDS SHOULD BE TRANSFERRED <u>TO THE REGISTRY OF THE COURT.</u>

Rule B provides that a garnishee is to answer within twenty (20) days and if the garnishee admits that it holds any property, the property may be "paid into the registry of the court." In this case, the money restrained by the maritime attachment will remain frozen until the arbitration is concluded. This could take several years. Therefore, Americas Bulk asks that the

Court enter an order requiring Citibank to pay the money into the registry of the Court so that it may be invested by the Clerk in an interest bearing account. The interest earned will then be added to the funds available for ultimate distribution after the London arbitration is concluded.

Ordering the money to be paid into the registry of the Court would moot the issue of how long the PMAG could reach after-acquired property since even under New York law payment into court brings an attachment to an end. CPLR 6214(b). See also Supplemental Admiralty Rule E(4)(c).

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order (i) declaring the PMAG served on August 25 to be satisfied and directing that funds acquired by Citibank after 12:51 pm on August 25 be released from the attachment; or (ii) in the alternative, declaring the PMAGs served on August 27, 30 and 31 void and releasing from attachment the transfer received by Citibank on August 31; or (iii) in the alternative, declaring the PMAG exhausted on September 20 and (iv) directing Citibank to transfer the attached funds into the registry of the Court, where the Clerk shall invest the funds in an interest bearing account.

Dated:  New York, New York
        October 29, 2004

                                            Respectfully submitted,

                              NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE

                        By:    s/Terry L. Stoltz_____
                              Terry L. Stoltz (TS 7650)
                              Wall Street Plaza; 88 Pine Street
                              New York, NY  10005
                              (212) 220-3830

Of Counsel:
    Terry L. Stoltz

X:\Public Word Files\82\44\legal\MemoLawPMAGSatisfied.s.sa.doc