Terry L. Stoltz (TS-7650)
NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
*Attorneys for Defendant Americas Bulk Transport Ltd.*
Wall Street Plaza
88 Pine Street
Seventh Floor
New York, New York 10005
(212) 220-3830

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
:
YTHAN LIMITED,                                                   :        04 Civ. 6655 (PKC)
:
                        Plaintiff,                               :
:
        - against -                                              :
:
AMERICAS BULK TRANSPORT LIMITED,                                 :
:
                        Defendant.                               :
:
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR
ORDERS (1) GRANTING LEAVE TO FILE THE
NOVEMBER 12, 2004 AFFIRMATION OF EDWARD COLL,
(2) GRANTING RECONSIDERATION OF THE ORDER OF
OCTOBER 27, 2004 AND ORDERING COUNTER-SECURITY
FOR THE CLAIM FOR LOST FREIGHT, (3) GRANTING
COUNTER-SECURITY FOR DEFENDANTS' CLAIMS FOR
LOST PROFITS AND FUEL; AND (4) DIRECTING
PLAINTIFF TO AMEND THE LETTER OF UNDERTAKNG
TO ADD DEFENDANT AS A BENEFICIARY**

**PRELIMINARY STATEMENT**

On September 16, 2004, Plaintiff Ythan Ltd. ("Ythan") was directed to post counter-security in the amount of $700,000. By an Order dated October 27, 2004, Ythan's motion for reconsideration was granted and the required counter-security was reduced to $141,572.09. This Memorandum of Law is submitted in support of the motions by Defendant Americas Bulk

Transport Limited ("Americas Bulk") for orders (1) granting leave to file the November 12, affirmation of Edward Coll in support of a motion for reconsideration under Local Civil Rule 6.3; (2) granting reconsideration of the order of October 27 and ordering counter-security on the claim for lost freight; (3) granting counter-security for Americas Bulk's claims for lost bunkers and lost profits; and (4) directing Ythan Ltd. to have the Letter of Undertaking securing the cargo claim amended to add Americas Bulk as a co-beneficiary.

## FACT STATEMENT

Phoenix Bulk Carriers, Ltd. of Monrovia, Liberia ("Phoenix Liberia") contracts to carry cargoes under voyage charters for various cargo owners or traders. Phoenix Liberia then sub-voyage charters these commitments to Americas Bulk on oral back-to-back terms. Americas Bulk charters in vessels on a time-charter basis to fulfill its obligations to carry cargoes.

On October 8, 2003, Ythan Ltd. chartered the M/V YTHAN to Americas Bulk for a maximum period of 7 months and 15 days at a daily hire of $13,500 per day (Exh. 1).

In January 2004, Phoenix Liberia agreed to carry a cargo of Hot Briquetted Iron ("HBI") fines for Primetrade AG (Exh. 2). Phoenix Liberia sub-chartered this obligation to Americas Bulk. However, HBI fines was a prohibited cargo under the head charter between Ythan Ltd. and Americas Bulk. An addendum to the charter was agreed to allow Americas Bulk to carry the HBI fines in return for a payment of $75,000. Ythan Ltd. and Americas Bulk mutually agreed that the carriage would be "devoid of any kind of claims whatsoever" (Exh. 3).

Pursuant to the addendum, Phoenix Liberia nominated M/V YTHAN to carry the HBI fines for Primetrade. The cargo was loaded in the Orinoco River in Venezuela on February 20 to 24, 2004. Regretfully, during the subsequent voyage to China, an explosion occurred, resulting

2

in the sinking of the vessel and the cargo, the death of six members of the crew and injury to other crewmembers.

Americas Bulk contends that under the addendum to the time charter, Ythan and Americas Bulk have mutually waived any claims arising out of the carriage of HBI fines. However, Ythan denies that it is bound by any mutual release. If Ythan's position is upheld, then Americas Bulk will pursue recovery of its own damages against Ythan.

As a result of the casualty, Americas Bulk has suffered damages as follows:

   a.  overpaid charter hire for YTHAN in the amount of $139,462.76;

   b.  the value of the fuel oil on board M/V YTHAN at the time of the sinking in the amount of $61,180;

   c.  lost freight for the carriage of HBI fines in the amount of $1,281,567.06;

   d.  lost profits of some $450,000 on the remaining days of the charter after the conclusion of the voyage carrying HBI fines; and

   e.  indemnity for liability to third parties, including but not limited to liability for the total loss of the cargo in the amount of $4,400,000.

## OVERPAID CHARTER HIRE

Under the time charter of M/V YTHAN, Americas Bulk was required to pay hire every fifteen (15) days, in advance (Exh. 1, line 58). In compliance with that clause, Americas Bulk made a periodic hire payment of $197,045.97 on February 24, 2004.

The time charter also provided that "should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss . . .) shall be returned to the Charterers at once" (Exh. 1, lines 102-103).

3

Provisionally, the overpaid hire was calculated to be $141,572.09. However, Americas Bulk has now issued a Final Hire Statement showing that the actual amount of unearned hire is $139,462.76 (Exh. 4).

Although Ythan has admitted that the calculation of overpaid hire was reasonable for purposes of security (Exh. 5), it has still refused to pay the hire. Apparently, it is withholding the overpaid, unearned hire as additional security for its claims.

## LOST FUEL

Under the time charter, Americas Bulk was to "provide and pay for all the fuel" (Exh. 1, line 39). To that end, Americas Bulk bought all of the fuel oil aboard M/V YTHAN at the commencement of the charter (Exh. 4) and was responsible for providing additional fuel throughout the term of the charter.

According to Ythan, at the time the vessel sank, she had onboard approximately 222.50 metric tons of Intermediate Fuel Oil ("IFO") and 55.60 metric tons of Marine Diesel Oil ("MDO"). The IFO was valued under clause 38 of the charter (Exh. 1) at $200 per metric ton and the MDO was valued at $300 per metric ton. Therefore, the total value of the fuel lost was $61,180.

## LOST FREIGHT

M/V YTHAN loaded most of the cargo at Palua, Venezuela but because of draft restriction in the Orinoco River, she then shifted to Mile 44 in the river to complete loading. She finished loading on February 24, 2004. Under the usual custom and trade in the industry, the bills of lading should have been signed and released on February 24. Instead, they were not issued and released until February 27.

Under Phoenix Liberia's voyage charter with Primetrade, and the back-to-back sub-voyage charter to Americas Bulk, freight was due within three days of signing and releasing bills of lading (Exh. 2).

Upon signing and releasing of the bills of lading on February 27, Primetrade was invoiced for freight in the amount of $2,581,567.06 due on March 1, 2004. Primetrade refused to pay the freight when it came due because M/V YTHAN and her cargo had been lost. Therefore, Phoenix Liberia was unable to pay the freight under the sub-voyage charter to Americas Bulk.

Even if Ythan is not responsible for the unreasonable delay in signing and releasing the bills of lading, Ythan is still liable for the lost freight because the casualty was caused by the acts, faults or neglects of Ythan and/or the unseaworthiness/unfitness of the vessel.

Primetrade made a $600,000 without prejudice payment to Phoenix Liberia toward the freight. Phoenix Liberia in turn remitted the $600,000 to Americas Bulk. Americas Bulk is unable to recover the freight balance of $1,981,567.06 for the carriage of the cargo of HBI fines.

However, Americas Bulk has saved some expenses by reason of the premature termination of the voyage.

    a.    The ocean voyage from Venezuela to China had been expected to last nearly 35 days. However, the vessel sank after some four days. Therefore, Americas Bulk would have had to pay daily hire at $13,500 for an additional 31 days, for a total savings in hire of $418,500;

5

    b.    The vessel would have passed through the Panama Canal enroute to China. The expenses of the Canal transit were estimated at $90,000;

    c.    Americas Bulk estimated that the costs of fuel for the ocean voyage to China would have been about $185,000. Deducting 10% for the portion of the voyage performed before the sinking, this savings was about $166,500;

    d.    The estimated port expenses in China were $25,000;

Thus the total savings to Americas Bulk by reason of the pre-mature termination of the voyage was approximately $700,000. The net loss of freight by Americas Bulk is therefore $1,281,567.06.

## LOST PROFITS

The time charter was for a maximum term of 7 months and 15 days After the conclusion of the voyage to China carrying HBI fines, there would have been another 45 days in the charter period.

At the time of the casualty, the market rate for vessels had increased over the hire rate that had been agreed with Ythan back in the October 2003. The daily market value for M/V YTHAN was some $8,000 to $10,000 more than the daily hire rate of $13,500 per day.

Therefore, by reason of the sinking of M/V YTHAN before the end of the term of the time charter, Americas Bulk lost an anticipated profit of some $450,000.

## INDEMNITY

Primetrade has commenced arbitration in London against Phoenix Liberia under the voyage charter seeking to recover $4,400,000 for the total loss of the cargo. Primetrade alleges

that the casualty was caused by the acts, faults or neglects of the officers and crew members of M/V YTHAN or because the vessel was unsuitable for carriage of the HBI fines.

If Phoenix Liberia is liable to Primetrade, then Americas Bulk will be liable to Phoenix Liberia under the back-to-back terms of the sub-voyage charter. Americas Bulk will, of course, seek indemnity from Ythan for any liability it has for the loss of the cargo.

## ARGUMENT

### POINT I.

### THIS COURT SHOULD ACCEPT THE NOVEMBER 12 AFFIRMATION OF EDWARD COLL IN SUPPORT OF THE MOTION FOR RECONSIDERATION.

The original application for counter-security was made in conjunction with an emergency application to vacate an attachment of Americas Bulk's funds. Americas Bulk, in the middle of substituting new counsel, had very little time to develop the factual supports for the demands for counter-security. Nonetheless, this Court originally granted counter-security for the claim for lost freight. On its motion for reconsideration, Ythan vigorously challenged the adequacy of the supports for the claim for lost freight. As Local Rule 6.3 does not permit the filing of additional affirmations in connection with a motion for reconsideration, Americas Bulk could not submit additional affirmations to respond to the criticism. The order of October 27, 2004, stated that "an inadequate . . . factual showing has been made to support the posting of security" for the claim for net unpaid freight.[1]

Americas Bulk has now obtained an additional affirmation from Edward Coll to provide the factual foundation for the claim for net unpaid freight, as well as the claims for lost profits

---

[1] The order also said the claim was "highly contingent" and that there was "an inadequate legal showing . . . ." These matters are addressed below.

7

for the remainder of the time charter period and for lost fuel oil. In order to avoid injustice, this Court should grant leave to file the affirmation in support of the motion for reargument.[2] In re Gulf Oil/Cities Service Tender Offer Litigation, 87-CV-8982, 1989 WL 123109, *2 (S.D.N.Y. Oct. 11, 1989) (court considered affidavits filed in support of motion for reargument in order to avoid elevating "form over substance"). Upon review of the factual materials in the affirmation, the Court will see that there is a sufficient factual basis for the claim for the net unpaid freight.

## POINT II.

### THE COURT SHOULD GRANT RECONSIDERATION OF THE OCTOBER 27 ORDER AND REQUIRE COUNTER-SECURITY FOR THE CLAIM FOR LOST FREIGHT.

#### STANDARD OF REVIEW

A motion for reconsideration under Local Rule 6.3 provides the Court "with an opportunity to . . . prevent manifest injustice." U.S. Titan, Inc. v. Guangzhou Men Hua Shipping Co., Ltd., 182 F.R.D. 97, 100 (S.D.N.Y. 1998), aff'd, 241 F.3d 135 (2d Cir. 2001); Munafo v. Metropolitan Transportation Authority, 381 F.3d 99 (2d Cir. 2004); Tamayo v. City of New York, No. 02-CV-8030, 2004 WL 725836 (S.D.N.Y. Mar. 31, 2004); Grubb v. Chater, 992 F.Supp. 634, 640-41 (S.D.N.Y. 1998).

#### THE CLAIM FOR LOST FREIGHT IS NOT CONTINGENT

In granting reconsideration, this Court stated that the claim for unpaid net freight was "highly contingent." However, as explained in detail by Mr. Coll in his latest affirmation, there

---

[2] Of course, the affirmation is also submitted in support of the separate request for counter-security for the claims for lost bunkers and lost profits, which are not part of the motion for reargument.

8

is nothing contingent about the claim. In fact, after allowing for savings in expenses not incurred as a result of the sinking of M/V YTHAN, Americas Bulk is now out of pocket $1,281,567.06.

Ythan objected that no written sub-voyage charter between Phoenix Liberia and Americas Bulk has been produced. However, as Ythan alleged in its papers in support of its motion for reconsideration, Phoenix Liberia and Americas Bulk are both members of the Phoenix Bulk corporate group. Phoenix US acts as agents for both of the companies. Indeed, Ythan's attorney swore under oath that payments to any Phoenix company were funds belonging to Americas Bulk. The last electronic funds transfer seized at Citibank on August 31 was a payment to Phoenix Liberia under a voyage charter, which was to then be transferred to Americas Bulk. The freight owed by Primetrade falls in the same category. There is no question that if the shoe was on the other foot, and Ythan had attached a freight paid by Primetrade to Phoenix Liberia, Ythan would insist that the funds belonged to Americas Bulk. There is no reasonable basis for denying the existence of the oral back-to-back charter between Phoenix Liberia and Americas Bulk.

Furthermore, it is axiomatic that oral charters are enforceable in admiralty. "The binding effect of oral contracts in maritime law is an ancient concept whose roots are deeply embedded in custom." Great Circle Lines, Ltd. v. Matheson & Co. Ltd., 681 F.2d 121, 124 (2d Cir. 1982) (citing Kossick v. United Fruit Co., 265 U.S. 731, 734 (1961)). Therefore, the lack of a written charter is no legal hindrance to a claim under the oral sub-voyage charter.

The oral sub-voyage charter is on back-to-back terms with the written voyage charter between Phoenix Liberia and Primetrade. The written charter establishes that the freight was due under both charters within three (3) banking days of the signing and release of bills of lading (Exh. 2). If the bills of lading had been timely issued on February 24, 2004, the freight would

9

have been due on February 27. Thereafter, the loss of the vessel and her cargo would not have made the freight refundable. However, as a result of the unreasonable delay in signing and releasing the bill of lading, the vessel sank before the freight became due. Therefore, Phoenix Liberia lost its right to collect freight under the voyage charter. The Lorna I, [1983] 1 Lloyd's Rep. 373; cf. The Karin Vatis, [1988] 2 Lloyd's Rep. 30. Similarly, Americas Bulk lost its right to collect freight under the sub-voyage charter.

Even if the unreasonable delay in issuing the bills of lading is found not to be a breach of the time charter, the vessel sank before the freight became due on March 1, 2004 because of the acts, faults, or neglects of Ythan, or those for whom Ythan is responsible, and/or the unseaworthiness of M/V YTHAN.

Under both scenarios, Ythan is liable for the net unpaid freight. After allowing for the without prejudice payment received from Primetrade and the savings in expenses as a result of the sinking of the vessel, Ythan is liable to Americas Bulk for $1,281,567.06. Americas Bulk is entitled to counter-security for this claim.

## POINT III.

### THE COURT SHOULD GRANT COUNTER-SECURITY FOR THE CLAIMS FOR LOSS OF FUEL AND THE LOSS OF PROFITS.

In addition to the claim for unearned hire which is already the subject of an order requiring counter-security, Americas Bulk now moves for counter-security for two more claims under the time charter. The first is for the value of the lost fuel aboard M/V YTHAN at the time the vessel sank. The second is for the lost profits for the remaining period of the time charter after the voyage to China with the HBI fines was completed.

The Court has already determined that Americas Bulk is entitled to counter-security for its non-frivolous claim for unearned hire. The claims for the value of the lost fuel and the lost profits are similarly non-frivolous claims for which Americas Bulk is entitled to counter-security. Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399-400 (2d Cir. 1995).

## POINT IV.

### THE COURT SHOULD DIRECT YTHAN TO HAVE THE CLUB LETTER OF UNDERTAKING AMENDED TO NAME AMERICAS BULK AS A CO-BENEFICIARY.

The Court declined to order any counter-security for the claim for indemnity for Americas Bulk's potential liability to Primetrade for the cargo loss because the claim was "highly contingent" and because Ythan had already posted security to Primetrade. September 15 Memorandum and Order, p. 6.

First, the claim has become less contingent. Since the Court's Memorandum and Order, Primetrade has commenced arbitration in London under the voyage charter against Phoenix Liberia to recover for the lost cargo (Coll Aff., ¶ 23). If Phoenix Liberia is held liable to Primetrade, Americas Bulk will be liable to indemnify Phoenix Bulk under the back-to-back sub-voyage charter party. On the other hand, Primetrade has taken no steps to commence arbitration against Ythan under the bills of lading.

Second, Americas Bulk has a proposal which will offer it security for its claim for indemnity, while at the same time avoid the necessity of requiring Ythan to post double security for the same claim. Americas Bulk proposes that the Court direct Ythan to have its Club amend the letter of undertaking to make Americas Bulk a co-beneficiary of the letter of undertaking. Protective language could be inserted in the letter to insure that the club never had to pay for the

11

cargo claim twice. On the other hand, if Primetrade continues on its course of pursuing recovery from Phoenix Bulk, and thereby from Americas Bulk, under the voyage charters, the letter of undertaking, which is currently solely for the benefit of Primetrade, could become valueless.

## CONCLUSION

For the foregoing reasons, Americas Bulk's motion for an order granting leave to file the November 12 affirmation of Edward Coll in support of the motion for reconsideration should be granted. Americas Bulk's motion for reconsideration of this Courts order of October 27 should be granted and Ythan should be directed to post counter-security in the amount of $1,281,567.06. Americas Bulk motion for an order granting counter-security in the amounts of $61,180 and $450,000 for the value of the lost fuel and the lost profits on the remaining days of the time charter period should be granted. Finally, Americas Bulk's motion for an order directing Ythan to amend the letter of undertaking to add Americas Bulk as a co-beneficiary should be granted.

Dated:  New York, New York
        November 12, 2004

                        Respectfully submitted,

                        NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE


                        By:   s/ Terry L. Stoltz
                              Terry L. Stoltz (TS 7650)
                              Wall Street Plaza
                              88 Pine Street
                              New York, NY  10005
                              (212) 220-3830
                              Our File:  82000044 TLS

Of Counsel:

   Terry L. Stoltz

X:\Public Word Files\82\44\legal\MemoReCountersecurity.doc